## 18756

Minnie B. WEAKS, Respondent, v. SOUTH CAROLINA STATE
HIGHWAY DEPARTMENT, Appellant

(159 S. E. (2d) 234)

536

*Messrs. Daniel R. McLeod, Attorney General,* and *Ben T. DeBerry, Assistant Attorney General,* of Columbia, and *Walter T. Lake,* of Newberry, *for Appellant,*

*Messrs. Pope & Shumpert,* of Newberry, *for Respondent,*

February 6, 1968.

Moss, Chief Justice.

This action was instituted by Minnie B. Weaks, the respondent herein, against the South Carolina State High-

way Department, the appellant herein, to recover damages for personal injuries alleged to have been sustained as a proximate result of a collision between an automobile driven by her in a westerly direction on State Highway No. 34, in Newberry County, and one of appellant's maintenance trucks. The action is brought under Section 33-229 of the 1962 Code of Laws.

In her complaint the respondent alleged that the appellant blocked the right lane of traffic with two large maintenance trucks without making any effort to warn the traveling public in general and the respondent in particular of the blockage of such lane of travel. It was further alleged that the respondent was driving her automobile in a proper and prudent manner, at a lawful rate of speed, and was maintaining proper control of her automobile; that as she cleared the brow of a hill on said highway, she suddenly and without warning came upon appellant's trucks which were completely blocking her lane of travel; that at the time and place the other lane of travel was being used by a vehicle traveling in the opposite direction; that respondent could not veer from her lane of travel without colliding with the approaching automobile and that she attempted to apply her brakes and stopped as quickly as possible, and that despite her efforts she ran into one of appellant's trucks and was permanently injured.

The respondent further alleged that as a direct and proximate result of the appellant's negligence in blocking her lane of travel and in failing to warn her of the obstruction at a dangerous point on the highway, she sustained serious permanent injuries. She further alleged that she did not bring about her injuries by her own negligence nor negligently contributed thereto.

Appellant admitted that two of its maintenance trucks were being operated upon said highway and that a collision occurred at such time and place between one of said trucks and the respondent's automobile but denied all other allegations contained in the complaint.

The case came on for trial before The Honorable James Hugh McFaddin, Presiding Judge, and a jury, at the April 1967 Term of the Court of Common Pleas for Newberry County. Motions for a nonsuit and a directed verdict were made by the appellant and refused by the trial judge. The jury returned a verdict in favor of the respondent for actual damages. Thereafter, the appellant moved for judgment *non obstante veredicto,* and in the alternative for a new trial. These motions were refused and this appeal followed.

In order for the respondent to recover she had to prove by preponderance of the evidence that the appellant was guilty of negligence and that such negligence was the proximate cause of her injuries and that she did not bring about her injuries by her own negligence or negligently contribute thereto. *Campbell v. Southern Carolina State Highway Department,* 244 S. C. 186, 135 S. E. (2d) 838.

The motions of the appellant for a nonsuit, directed verdict and judgment *non obstante veredicto* were made upon the grounds (1) that there was no evidence from which the jury could reasonably infer that the appellant was negligent on the occasion in question; (2) that the only reasonable inference to be drawn from the testimony was that the respondent's negligence caused her own injuries or negligently contributed thereto. The appellant, by its exceptions, asserts that the trial judge was in error in failing to grant its motions. However, upon appeal to this court the appellant has abandoned the exceptions asserting error on the part of the trial judge in refusing its motion for a directed verdict on the ground that there was no proof of actionable negligence on the part of the appellant. This leaves for determination only the question of whether the trial judge should have held as a matter of law that the respondent was guilty of contributory negligence.

We have held that ordinarily contributory negligence is an issue for the jury and it rarely becomes a question of law for the court. Where under all the circumstances the evidence is susceptible of more than one

reasonable inference as to whether a person is guilty of contributory negligence the case must be submitted to the jury. *Toole v. Salter,* 249 S. C. 354, 154 S. E. (2d) 434. We examine the evidence in the light of this rule.

It appears that about 11:00 o'clock on the morning of January 20, 1966, the respondent was driving her automobile from her home to the hospital to visit her husband. As she cleared a hill on State Highway 34, driving at a speed of about 45 miles per hour, she was confronted with two maintenance trucks belonging to the appellant which she says completely blocked her right lane of travel. The respondent testified that she first saw the trucks when she got to the brow of the hill and estimated the distance from the brow of the hill to the trucks to be about 100 feet. Other witnesses gave varying estimates of the distance from the brow of the hill to where the trucks were parked as being 150 to 250 feet. These witnesses also testified that the road was only partially blocked by the trucks. The respondent testified that she could not enter the left lane because a car was approaching and could not turn to the right because of a ditch and bank. She said that she applied her brakes but was unable to stop and ran into the rear of the truck. It is admitted that there was no flagman nor any signs or signals of any kind warning of the presence of the trucks on the highway.

We think under the evidence heretofore briefly recited that an issue of fact for jury determination was presented as to whether respondent was guilty of contributory negligence. More than one reasonable inference could be drawn from the testimony upon this issue and this required the trial judge to submit such to the jury. It follows that no error was committed in refusing the motions of the appellant for a nonsuit, directed verdict and judgment *non obstante veredicto* upon the grounds stated.

The remaining exceptions assert error with regard to the admission of testimony and the charge of the trial judge.

During the cross examination by the respondent of a highway patrolman who investigated the accident the appellant objected to a question about reaction time varying between old people and young people on the ground that the standard of care is that of an ordinary reasonable and prudent person. The trial judge overruled the objection and allowed the witness to answer the question. The answer of the witness was that he assumed there would be a difference in the reaction time of an older person and a younger one. The inquiry ceased with that answer and no further questions were asked concerning any such varying reaction time. In his instructions to the jury the trial judge fully and adequately instructed the jury that the standard of care imposed upon the users of the highway was that of an ordinary reasonable and prudent person. In view of the indefiniteness of the witness's answer, the failure to pursue the matter and the instructions given to the jury by the trial judge, any error complained of was harmless and resulted in no prejudice to the appellant.

The next question for determination is whether the trial judge committed error in refusing to admit testimony concerning the result of an experiment conducted by a witness for the appellant. The witness, a highway patrolman, testified that after the trial of this case had begun he and another patrolman went to the scene of the collision in separate cars. This witness further testified, in the absence of the jury, that he and the other patrolman performed an experiment which he described as follows:

"Well, I had him park his car in the same place that the truck was parked, with the exception that I had him park on the shoulder completely. I went down the road and turned around and proceeded back in a westerly direction. And I set my speedometer on 58 miles an hour. And I just held it until I came over the hill where I saw the car. And when I—when I saw the Patrol car then I applied my brakes. I didn't let up on it until I had the Patrol car in vision. And I applied the brakes to see how much distance it would be

from where I stopped to the car after I had—I had reacted and then give the breaking distance."

He then testified that he measured the distance from the front of his patrol car after it stopped to the rear of the other patrol car and the distance was 224 feet. The patrol car used in the experiment was a 1966 Chevrolet equipped with power brakes. The automobile driven by the respondent when she collided with the highway department truck was a 1957 Ford. No one familiar with the exact location and position of the highway department truck on the highway at the time of the accident went with the witness and his fellow patrolman to perform the experiment and it is clear from the record that the witness's knowledge of the location and position of the truck on the day of the collision was only approximate.

The rule laid down by this court for the introduction of evidence and an experiment out of court requires that the experiment be made under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy. It is not required that the conditions be identical with those existing at the time of the controversy; it is sufficient if there is a substantial similarity. *McDowell v. Floyd,* 240 S. C. 158, 125 S. E. (2d) 4.

At the time of the experiment the witness was on the lookout for an object which he had placed on the highway for the purpose of being seen and which he knew would be there when he reached the top of the hill. He obviously knew at what point he would see the parked patrol car having placed it and driven away from it. He, therefore, knew beforehand at what point he would apply his brakes. Under the circumstances of the collision, the respondent was unaware of the presence of the highway department trucks on the highway until she reached the top of the hill and she likewise did not know upon first seeing them that they were completely stopped. The experiment took place during daylight hours, as did the collision, and

at a time when normal conditions were substantially similar. However, the human element involved was different. The conditions under which the automobiles were driven were entirely different. The respondent did not have the knowledge of an obstruction in the highway which the patrolman had and had been subjected to a sudden emergency to which the patrolman had not been subjected. Further, the patrolman while performing his experiment was not required to react to the additional factor of an approaching vehicle as was the respondent. We think that the circumstances of the experiment did not meet the test of substantial similarity and the evidence of the test was improper and without probative value on the issues before the jury, namely, contributory negligence and sudden emergency. The trial judge committed no error in excluding the testimony.

The appellant next contends that the trial judge was so repetitious in charging the jury as to the doctrine of sudden emergency and sudden peril, that he, in effect, delivered a charge upon the facts. The portions of the instructions to the jury relating to the sudden emergency doctrine are as follows:

"I charge you that whenever a motorist is confronted with a sudden peril brought about by the negligence of another—that is to say, not brought about by her own negligence—she is not held to the exercise of the same degree of care as if she would be if she had had time for reflection and time to think and choose the wisest course.

"I charge you that an automobile driver who, by the negligence of another and not by her own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision, that she is not guilty of negligence if she makes such a choice as a person of ordinary reason and prudence placed in the same position might make, even though she did not make the wisest choice.

"In that connection I tell you that you judge the conduct of these parties to this action by the position in which they found themselves on this date and not hindsight.

"I charge you that the person required to act in the face of a sudden and imminent peril, not brought about by her own negligence, should not be judged in the light of later events, but under the circumstances surrounding them at the time, by the standard of care of what a person of ordinary prudence would have likely to have done under the same or similar circumstances."

We do not think that the foregoing instructions were improperly repetitious giving undue prominence or emphasis to the respondent's contention that she was placed in a sudden emergency. The first paragraph of the quoted charge is an incomplete statement of the doctrine of sudden emergency. It goes no further than to state that there are qualifications in the application of the standard of due care for one confronted with a sudden emergency. The second and third paragraphs in the quoted portion of the charge define the qualifications suggested in the first paragraph. The last paragraph merely amplifies and makes more explicit the preceding three paragraphs. In the first, second and fourth paragraphs there is repeated the condition for the applicability of the doctrine, that is, that the emergency with which one is confronted must not be brought about by his own negligence. Had that element of the doctrine been stated only once, the charge on sudden emergency could have been given more concisely. However, repetition of that element could not have been prejudicial to the appellant for the reason that contained in it was the repeated statement that the respondent must not have been negligent in bringing on the emergency. The appellant's exception to this portion of the charge is without merit.

The final question for determination is did the court err in charging the requirement of Section 46-386 of the Code. That section, which was quoted by the trial judge is as follows:

*"Limitations on overtaking on the left.* No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same

direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

It is the position of the appellant that the foregoing instruction was inapplicable under the evidence for the reason that its truck was stationary in the road and, therefore, could not be proceeding in the same direction. There is evidence that the truck of the appellant with which the respondent collided was loaded with crusher run rock and such was to be used in repairing a driveway. The appellant's truck was temporarily stopped on the highway while an employee in charge of the trucks went to a house near the highway to ascertain whether the driveway leading to such house was the one that was to be repaired. Upon ascertaining that he was at the proper place, this employee testified that it was his purpose to move the truck into the driveway for the purpose of making the necessary repairs.

We have not found any case in this State construing Section 46-386 of the Code under the factual situation here presented. However, statutes of the same import have been construed by courts of other states. In the case of *Butane Corporation v. Kirby,* 66 Ariz. 272, 187 P. (2d) 325, the court said:

"\* \* \* A vehicle temporarily stopped on the highway does not lose its character as a 'proceeding vehicle' merely by the fact that it is not in motion. The rules of the road must of necessity be reasonably interpreted, and a car passing a stationary vehicle should pass on the left thereof after determining that the road is clear and that the passing can be safely made."

In the case of *Hutchinson v. Kinsley,* 66 N. D. 25, 262 N. W. 251, it was held that a vehicle which temporarily stops

in its lane of travel is "proceeding" within statutory rule that overtaking driver shall pass at safe distance to left of vehicle "proceeding" in same direction.

In the case of *Fries v. Berberich,* Mo. App., 177 S. W. (2d) 640, the court said:

"Bearing in mind that the purpose of the legislature, when it enacted the statute, was to establish a uniform rule of the road so as to avoid collisions, the only sensible construction of the statute would seem to be that whenever any person is on that portion of the highway devoted to public travel with the present intention of using it to convey himself from one point to another, he is proceeding on the highway within the meaning of the statute though his car momentarily is not in motion."

We think the foregoing cases construing the words "proceeding" or "proceeding in the same direction", in passing statutes similar to ours, is a reasonable and sensible interpretation of the aforesaid words. We apply such construction to the factual situation here involved and find no error on the part of the trial judge in charging Section 46-386 of the Code.

The exceptions of the appellant are overruled and the judgment below is affirmed.

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.