**H. A. MUHLHAUSER, Plaintiff and Appellant,**

v.

**ARCHIE CAMPBELL CONSTRUCTION CO., Defendant and Respondent.**

Civ. No. 8468.

Supreme Court of North Dakota.

Aug. 9, 1968.

Fleck, Smith, Mather, Strutz, Mayer & Stewart; and Pearce, Engebretson, Anderson & Schmidt, Bismarck, for appellant.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for respondent.

TEIGEN, Chief Justice.

This is an appeal from an order granting a new trial to the defendant. The motion was granted on the ground of insufficiency of the evidence to justify the verdict and that the verdict is against law.

The plaintiff claims damages to its tractor-trailer resulting from a collision with the defendant's cook-car which was being towed by the defendant's gravel truck on U. S. Highway No. 10, about five miles west of Dickinson, North Dakota, on September 14, 1963. The defendant, by counterclaim, asks damages for its cook-car.

The defendant's road construction company was moving to a new jobsite for which it established a new campsite five miles west of Dickinson, North Dakota. The cook-car and gravel truck combination was sixty-two feet, seven inches in length. The cook-car, mounted on wheels, was forty feet, nine inches long and ten feet, one-half inch wide. The towing gravel truck was equipped with conventional side-mounted rearview mirrors and, because of the wider cook-car which it was towing, the defendant's employee could not see behind him unless he turned the truck to one side or the other. The cook-car was not equipped with turn signals, stop lights, or reflectors. The defendant's cook-car-truck combination was being moved in a westerly direction and had reached a point on the highway across from the defendant's new campsite, which was located on the south side of the highway, when the accident happened. An approach connected the highway with the campsite area thus necessitating a left turn by the defendant's driver to enter the campsite. As he neared the campsite the defendant's driver drove to the right side of the highway to enable him to make a wide turn onto the approach because it was a "pretty narrow" approach. The driving surface of the blacktopped two-lane highway was about twenty-eight feet wide and it had shoulders upon which one could drive. The shoulders were about six feet wide. The right wheels of the cook-car-truck combination were on the north shoulder of the highway and the left wheels were on the traveled portion, or driving surface, of the highway. According to the testimony of the defendant's driver he had driven with the right wheels on the shoulder for some distance while he slowed his vehicle to about ten miles per hour. It was raining and he had the windshield wipers on his vehicle in operation. The headlights were on and the windows were up and had moisture on them that reduced visibility. After having slowed his vehicle and upon arriving at a point opposite the approach to the campsite, he commenced a left turn across the highway toward the campsite approach without being able to see to the rear and without signaling his intention to turn. When defendant's driver turned his vehicle toward the left, he testified he then had a full clear view in his rearview mirror of the roadway behind. The defendant's driver testified he saw in his rearview mirror the plaintiff's truck-trailer coming a considerable distance behind. The plaintiff's truck was then crossing the centerline and proceeding into the south lane for passing. When he saw the plaintiff's vehicle approaching from the rear the defendant's driver stopped his vehicle at a point within three or four feet from the centerline of the highway and did not leave the north or westbound lane of the highway.

The plaintiff's driver was operating the plaintiff's new truck-trailer, which was in good mechanical condition, in a westerly direction approaching the defendant's cook-car and gravel truck combination from the rear. He had been traveling about forty-five miles per hour. The plaintiff's driver testified that he first observed the defendant's vehicle at a distance of approximately six hundred to nine hundred feet. It was then partially pulled over onto the right-hand shoulder of the highway and appeared to be stopped. He testified he turned into the left, or passing lane, a distance of from three hundred to six hundred feet back and flashed his lights. He also slowed to about thirty-five miles per hour. He did not sound his horn. It was early in the morning, about 7:00 a. m., Mountain Standard Time, and the sun had risen but the sky was overcast and it was raining. The plaintiff's driver testified that as he approached the defendant's vehicle he saw that it was moving as it started to turn south (left), across the highway, without signaling. When he saw this he began to brake his vehicle by applying the hand brake which operates on the trailer and turned his vehicle toward the right. The tractor-trailer laid down skid marks thirty-two feet in length. He testified that it appeared to him that if he continued in the left lane, he would hit the defendant's vehicle broadside; and, if he went into the ditch on the left, he would hit the approach to the campsite area. The plaintiff's tractor-trailer jackknifed due to the slippery road but continued to move forward and toward the right or north side of the highway. It went into the right or north ditch. However, before going into the ditch, the plaintiff's truck-trailer struck the right rear corner of the defendant's cook-car. According to the stipulation entered into by the parties at the trial the plaintiff sustained damages in the amount of $14,854.60 and the defendant sustained damages in the amount of $3,366.27.

The jury found for the plaintiff and dismissed the defendant's counterclaim.

The defendant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court denied the motion for judgment notwithstanding the verdict on the ground that it was not timely made. No error is urged on this ruling. It granted the motion for a new trial. The motion is grounded on specifications of insufficiency of the evidence to support the verdict, stated succinctly, as follows:

1. The accident occurred under daylight conditions;

2. The plaintiff's driver failed to give an audible signal of intention to pass as required by statute;

3. The plaintiff's driver failed to have his vehicle under control; and,

4. That over one-half of the traveled portion of the highway was at all times open and available for passing.

It was alleged that the above specifications of insufficiency of the evidence established the verdict rendered was against law since the plaintiff's driver was contributorily negligent as a matter of law.

There were no eyewitnesses to the accident who testified except the respective drivers. A highway patrolman investigated the accident but did not testify at the trial. Pictures were introduced in evidence of the vehicles and the highway which were taken after the accident. There is no conflict in the testimony except on the question of the speed of the plaintiff's truck immediately before the accident. The defendant's driver testified that when he saw plaintiff's vehicle in his rearview mirror he saw black smoke coming from the exhaust pipe, indicating to him that it was being accelerated, and that he estimated its speed at from forty-five to fifty miles per hour. The plaintiff's vehicle is diesel powered and equipped with an up-

right exhaust pipe. The plaintiff's driver testified he was driving at forty-five miles per hour and that he slowed to about thirty-five miles per hour. However, there is no claim that the highway speed limit was being violated.

The trial court, in its memorandum opinion, states:

"If the [defendant's] vehicle was moving, as contended by plaintiff's driver, it was the duty of the plaintiff to sound his horn as required by statute and his failure to do so would be negligence and contributory negligence, barring a recovery.

"The failure of the plaintiff's driver to observe the position of the defendant's truck can only be attributed to his failure to keep a proper lookout as required by law.

"A review of the evidence as a whole clearly indicates that the verdict as rendered is not in accord with the real merits of the controversy; that the jury, to reach such a verdict, must have disregarded or failed to give due consideration to the evidence of both sides; or the jurors misapprehended the facts and the law governing the case. The defendant has not had a fair and impartial trial. The verdict is against law and the evidence in the case is legally insufficient to support a verdict in favor of the plaintiff. In the interest of justice it is necessary that the defendant be granted a new trial."

In other words, the court found the verdict returned was not in accordance with the evidence because it was against law.

▮ A motion for a new trial on the ground of insufficiency of the evidence is addressed to the sound judicial discretion of the trial court. Sullwold v. Hoger (N. D.), 110 N.W.2d 457; Hamre v. Senger (N.D.), 79 N.W.2d 41; McDermott v. Sway, 78 N.D. 521, 50 N.W.2d 235; Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228.

The discretion to be exercised by the trial court is a legal discretion to be exercised in the interests of justice, and where the motion is granted, it must appear that the alleged cause or the ground had actual existence. Kohlman v. Hyland, supra. To do that, however, there must be some ground for the exercise of discretion. If the evidence can sustain a judgment only one way there is no ground for the court to exercise discretion. If, however, there is a basis in the evidence for a decision either way, then there is ordinarily room for the court to exercise its discretion.

McDermott v. Sway, supra. Kohlman v. Hyland, supra.

▮ The question before this Court, on appeal from the order granting a new trial, is whether the trial court had the grounds to exercise its discretion and, if so, whether it abused that discretion. The discretion is a legal discretion and not an arbitrary discretion. It is therefore clear that the trial judge who granted the new trial must act, not arbitrarily, but on facts, showing a legal ground for a new trial.

▮ A case once tried and concluded by a verdict should not be reopened and retried unless a careful examination of the record shows that justice so requires. Benzmiller v. Swanson (N.D.), 117 N.W. 2d 281; Campbell v. Russell (N.D.), 132 N.W.2d 705; Linington v. McLean County (N.D.), 146 N.W.2d 45, appealed after remand, 150 N.W.2d 239; Sullwold v. Hoger, supra.

We have considered the record in this case with care. We are unable to find in it an indication that the defendant has not had a fair trial.

▮ The trial court, in its memorandum decision, does not base its decision on the unsatisfactory state of the evidence or the weight of the evidence, nor does it point out a conflict in the evidence. It finds the evidence establishes the facts. With this we agree. The trial court prem-

ised its decision on the ground that the plaintiff's driver violated Sec. 39–10–11, North Dakota Century Code, which states that the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof and when not in a business or residence district, the driver of the overtaking vehicle shall give audible warning with his horn or other warning device before passing or attempting to pass the overtaken vehicle. This statute also provides that under such circumstances the driver of the overtaken vehicle shall give the right of way in favor of the overtaking vehicle. It is established, without conflict, that the plaintiff's driver did not give audible warning in this case. We have held on numerous occasions that the violation of a statutory rule of the road is not negligence, as a matter of law, but merely evidence of negligence. Glatt v. Feist (N.D.), 156 N.W.2d 819, and cases cited therein. Whether the violation of the statutory duty constitutes negligence is a question of fact for the trier of fact. Attleson v. Boomgarden (N.D.), 73 N.W.2d 448. In order to constitute evidence of contributory negligence, it must also be shown that failure of the plaintiff's driver to give an audible signal was a proximate cause of the collision. In order to bar a recovery under such a defense, there must be a causal connection between the plaintiff's negligence and the injury. Larson v. Meyer (N.D.), 135 N.W.2d 145, 164; Stelter v. Northern Pacific R. Co., 71 N.D. 214, 299 N.W. 310; Hutchinson v. Kinzley, 66 N.D. 25, 262 N.W. 251; Acton v. Fargo & Moorhead Street R. Co., 20 N. D. 434, 129 N.W. 225. South Dakota follows the same rules. See Johnson v. Chicago & Northwestern Ry. Co., 71 S.D. 132, 22 N.W.2d 725, and at p. 730, where it states:

"\* \* \* The mere violation of a statute, if it is not a legal contributing cause of the injury, will not bar recovery."
[Citations omitted.]

■ The purpose of sounding the horn before passing, or attempting to pass another vehicle upon a highway, is to alert the other driver that one intends to pass. The defendant's driver testified that he saw the plaintiff's vehicle attempting to pass from the rear and that he stopped his vehicle in the north lane three or four feet from the centerline leaving the passing lane clear. From this evidence the jury could find, as is indicated by its verdict, that there was no causal connection between the plaintiff's driver's failure to sound his horn and the collision. The defendant's driver testified he saw in his rearview mirror the plaintiff's truck-trailer coming a considerable distance behind him. At one point he testified that he knew it was coming when it was nine hundred feet behind. There is no claim on the part of the defendant's driver that failure on the part of the plaintiff's driver to sound his horn would have alerted him to the fact that plaintiff's driver was intending to pass. In fact, the defendant's driver testified that when he saw the plaintiff's truck for the first time it was crossing into the passing lane. The trial court also cites Sec. 39–10–25, N.D.C.C., which provides that the driver of a vehicle turning left to enter a private road or driveway, shall yield the right of way to all vehicles approaching on said highway and to any vehicle which is then in the left-hand lane overtaking or about to overtake the left-turning vehicle. Defendant's driver obeyed the statute in that he did stop his vehicle three or four feet before coming to the centerline of the highway and did leave the left and/or passing lane clear. There is no conflict in this evidence. This is admitted by the plaintiff.

The jury was instructed as to the law of the road including the two statutes cited above. The trial court, in its instructions, carefully defined negligence and contributory negligence and stated that the essential requirement of contributory negligence is that the act of the plaintiff must be a

negligent act which contributed in some degree as a proximate cause of the injury. Further, that if the jury should find that the plaintiff's driver was guilty of contributory negligence, as measured by the rules laid down by the court, it should find for the defendant for a dismissal of the plaintiff's cause of action.

■ The trial court did not instruct specifically on the emergency rule, although such an instruction had been requested by the plaintiff. It did however instruct that, to determine whether or not the plaintiff's driver was guilty of contributory negligence, his acts must be measured by what ordinarily prudent persons under the same circumstances and surroundings would have done. There is no doubt that the plaintiff's driver did not exercise the wisest choice. Under the facts, as reconstructed after the accident, it would have been wiser to have continued driving in the passing lane. However, under the theory of the plaintiff's case as presented in the trial, the turning movements of the defendant's vehicle toward the approach on the left side of the highway created a situation of peril involving an appearance of impending danger for which the plaintiff's driver was not responsible and he was therefore confronted with an emergency and that, under such circumstances, his duty to exercise ordinary care would be measured by the exercise of such care that an ordinarily prudent person would exercise in the same situation. The emergency rule is well established in this state. Spielman v. Weber (N.D.), 118 N.W.2d 727; Bauer v. Kruger (N.D.), 114 N.W.2d 553; Gravseth v. Farmers Union Oil Company of Minot (N.D.), 108 N.W.2d 785.

■ The jury had before it all of the evidence adduced at the trial. Defendant's driver admitted he had been driving slowly along the extreme right-hand side of the highway with the right wheels of his vehicle on the shoulder and that he turned toward the approach located on the south side of the highway while traveling at about ten miles per hour. In this turning movement, he admits that he drove his vehicle to within three or four feet of the centerline before he stopped. The plaintiff's driver testified that as he approached from behind, in the passing lane, it appeared to him that if he continued in the left lane he would hit the defendant's vehicle broadside and if he went into the left ditch he would hit the approach to the campsite area. Therefore, he chose to turn to the right and at the same time to apply the hand brake which operates on the trailer. He testified he thought at the time this was the best choice. As a result, however, plaintiff's truck-trailer combination jackknifed but it is clear the plaintiff's vehicle did go to the right as intended and into the right-hand ditch, striking the rear portion of defendant's cook-car on the way. On the basis of this evidence, the jury could well have inferred that the plaintiff's driver exercised such care as an ordinarily prudent person would have exercised in the same situation. The inference of negligence or non-negligence is for the jury. There can be no doubt whatsoever that the evidence warrants a finding that the defendant was negligent and that under the circumstances the plaintiff's driver was not contributorily negligent. The facts from which these inferences are to be drawn rest upon evidence which is not in conflict and the jury was not required to pass on the credibility of the witnesses. Since the inference is clearly justified, the trial court, in ruling upon the motion for a new trial, was not called upon to exercise any discretionary power in determining whether the verdict was contrary to the evidence. Benzmiller v. Swanson, supra. Kohlman v. Hyland, supra. There is no question of the sufficiency of the evidence to justify the verdict, and it was improper to find that the evidence was insufficient to justify the verdict as a matter of law. The trial court who grants a new trial must act, not arbitrarily, but upon facts showing legal grounds for a new trial that have actual existence. McDermott v. Sway, supra. Kohlman v. Hyland, supra.

The evidence does not warrant the holding of the trial court that, as a matter of law, the plaintiff's driver was contributorily negligent because he failed to sound his horn in passing or because he failed to keep a lookout. The jury found in accordance with the law and the undisputed evidence and that the plaintiff's driver was not contributorily negligent. Nothing can be accomplished by a new trial except to have another jury review the cause.

The order appealed from is reversed and the case is remanded with directions to reinstate the judgment.

KNUDSON, J., concurs.

STRUTZ, Judge.

I concur. Where the trial court finds no conflict in the evidence, and bases his decision to grant a new trial largely on the fact that the plaintiff's driver violated the provisions of section 39–10–11, N.D.C.C., which requires a driver of a vehicle overtaking another vehicle going in the same direction, when not in a business or residential district, to give warning with his horn before attempting to pass such vehicle, I believe that the trial court abused its discretion in ordering a new trial. Failure to give such warning is not negligence as a matter of law, but is only evidence of negligence to be considered by the jury. Gravseth v. Farmers Union Oil Company of Minot, 108 N.W.2d 785 (N.D.); Erdahl v. Hegg, 98 N.W.2d 217 (N.D.); Glatt v. Feist, 156 N.W.2d 819 (N.D.).

Whether such violation was negligence was therefore a question for the jury to determine, for this evidence was before them for their consideration, and they considered it in arriving at their verdict.

ERICKSTAD, Judge (dissenting).

Although the majority of this court relies heavily on Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228 (1928) and McDermott v. Sway, 78 N.D. 521, 50 N.W.2d 235 (1951), the latter case based on principles stated and analyzed by Judge Birdzell in the former case, the majority does not refer to the first and most fundamental rule laid down in *Kohlman*—that is, that orders granting new trials stand on a firmer foundation in an appellate court than do orders denying new trials. Kohlman v. Hyland, supra, 219 N.W. 230.

In a still earlier case this court said:

It is true that an order of the court denying "a new trial rests largely in the discretion of the trial court" and the appellate court will not interfere unless an abuse of judicial discretion is shown. Huber v. Zeiszler, 37 N.D. 556, 560, 164 N.W. 131. This is applicable where the ground alleged is the insufficiency of the evidence. Martin v. Parkins, 55 N.D. 339, 213 N.W. 574. In such case we review the evidence to determine whether the trial court acted within its discretion. Martin v. Parkins, supra.

A distinction, however, is made between cases where the trial court, in the exercise of its discretion, grants a new trial, and where a new trial is denied. In the former case a stronger showing must be made in order to secure a reversal. Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228. Shuman v. Lesmeister, 34 N.D. 209, 158 N.W. 271.

Donahue v. Boynton, 62 N.D. 182, 242 N.W. 530, 532 (1932).

In Linington v. McLean County, 146 N.W.2d 45 (N.D.1966), this court, speaking through Judge Strutz, said:

[A] motion for new trial based on insufficiency of the evidence is addressed to the sound, judicial discretion of the trial court, and the action of the trial court in passing on such motion will not be disturbed unless an abuse of discretion is clearly established. Stokes v. Dailey (N.D.), 97 N.W.2d 676; Grenz v. Werre (N.D.), 129 N.W.2d 681; Kuntz v. McQuade (N.D.), 95 N.W.2d 430.

An order granting a new trial on the ground of insufficiency of the evidence will not be reversed as readily as an order denying a new trial, since such order granting a new trial does not make final determination of the case. Olson v. Thompson (N.D.), 74 N.W.2d 432; Mischel v. Vogel (N.D.), 96 N.W.2d 233.

Appellate courts are much more reluctant to interfere with the action of a trial court in granting a new trial than they are to interfere when a new trial has been denied. Blum v. Standard Oil Co., 68 N.D. 329, 279 N.W. 764.

Linington v. McLean County, supra, 146 N.W.2d 52.

In *Donahue* this court reviewed the evidence and found that the trial court did not exercise a legal discretion in denying a new trial; in *Kohlman* this court reviewed the evidence and found that the trial court abused its discretion in granting the motion for new trial; and in *Linington* this court reviewed the evidence and found that the trial court did not abuse its discretion in granting the motion for new trial. Obviously, the difference must lie in the facts of the cases, but the rule that the decision lies in the discretion of the trial court is fundamental.

This brings us to an analysis of the majority opinion in the instant case.

The majority of the court first quotes a part of the trial court's memorandum and immediately afterward says: "In other words, the court found the verdict returned was not in accordance with the evidence because it was against law."

I do not believe that this is a correct—or, for that matter, a fair—analysis of the trial court's finding.

It was obviously the trial court's view that one of the major contributing causes of the accident was the failure on the part of the plaintiff's driver to give an audible signal before commencing to pass the defendant's vehicle. The court did not consider the failure to give an audible signal to be the sole factor, as is indicated by its finding that the plaintiff's driver failed to keep a proper lookout.

That the trial court weighed the evidence, found the facts, and arrived at a conclusion therefrom could not of itself be considered error, for otherwise it could not have exercised that discretion it is said to have in such instances.

In Syllabus 4 of Long v. People's Department Store, 95 N.W.2d 904 (N.D. 1959), this court said:

In considering motion for a new trial on ground of insufficiency of evidence, trial courts are not confined to a consideration of whether the verdict and judgment are supported by substantial evidence, but they may, with view to promoting the ends of justice, weigh evidence and, within certain limitations, act upon their own judgment with reference to its weight and credibility.

In Aylmer v. Adams, 30 N.D. 514, 153 N.W. 419, 421 (1915), the court used different language to express the discretion a trial court has when deciding a motion for new trial based on a discretionary ground (in *Aylmer,* newly discovered evidence):

[T]he appellate court will uphold the ruling of the trial court granting a new trial on a discretionary ground, when it would have refused to disturb the decision of that court had a new trial been denied, and will sustain such order, even though the trial court would have been justified in reaching a different conclusion, and *although the appellate court might deem a different conclusion the better one.* (citations omitted; emphasis added)

In our most recent decision involving this issue (a decision which the majority has today without reference apparently overruled) this court, speaking through

Judge Strutz, said in response to the petition for rehearing:

Judge Christianson, in the earlier case of Reid v. Ehr, 36 N.D. 552, at page 558, 162 N.W. 903, considered the same question. He pointed out that it should be remembered that it is the trial court, not the appellate court, which is vested with discretionary powers in determining a motion for new trial. The appellate court is limited to a consideration of whether the trial court clearly abused its discretion in ordering a new trial. The question presented to the appellate court is not whether a new trial should be granted or denied, but whether the trial court abused its judicial discretion in ordering a new trial. The test of what is within the discretion of a court has been suggested by the question: May the court properly decide the point either way? If not, then there clearly is no discretion to be exercised. If there is no latitude for the exercise of the power, it cannot be said that the power is discretionary. The only limitation upon the exercise of the discretionary power by the trial court in passing upon a motion for new trial is that such discretionary power must not be abused.

In determining the question presented on the appeal from the order granting the new trial and on this petition for rehearing, we must remember the position of advantage which the trial court had. He saw the plaintiff and heard his story; he also saw all of the witnesses and heard their versions of what occurred. All of these things place him in a favored position in passing upon the motion for new trial on the ground of insufficiency of the evidence. The trial court, in the exercise of his sound, judicial discretion, and in the interests of justice, determined that a new trial should be granted in this case. We, as the appellate court, cannot say on the record before us that the trial court abused that discretion. From the record, the jury could properly have decided this case either way. Therefore, it was proper for the trial court to exercise his discretion. * * *

Sucher v. Oliver-Mercer Electric, 151 N.W.2d 321, 328 (1967).

Without restating the evidence in this case, it would be fair to say that the jury could have decided either (1) that the plaintiff's driver was contributorily negligent in failing to sound his horn, which very reasonably could have alerted the driver of the defendant's vehicle and thus have prevented him from turning his vehicle toward the left, or in failing to keep a proper lookout; or (2) that the jury could have decided that the plaintiff's driver was not contributorily negligent. That being the case, the trial court, in exercising its discretion, could also have decided either way without abusing that discretion.

There is another reason that the trial court could reasonably have given in this case to justify the granting of a new trial, and that is the unsatisfactory state of the evidence—a state which might reasonably be corrected in a new trial.

In Syllabus 1 of Zachmeier v. Oil Exploration Co., 76 N.W.2d 533 (N.D.1956), in sustaining an order granting new trial because of the unsatisfactory state of the evidence, this court said:

There is a strong presumption in favor of an order granting a new trial on the ground of insufficiency of the evidence to support the verdict, and the order will not be disturbed in the absence of clear showing that there was an abuse of discretion in granting it.

The evidence is unsatisfactory in the instant case as it relates to position and movement on the highway of the defendant's vehicle at the time the plaintiff's driver caused the plaintiff's vehicle to enter the south lane to pass the defendant's vehicle. It is reasonable to presume that the evidence relating thereto could be clarified on retrial.

Accordingly, I believe that the trial court's order granting the motion for a new trial was an exercise of sound judicial discretion in the interests of justice, and that the order should have been affirmed.

PAULSON, J., concurs.