Shirley NITSCHKE et al.,
Plaintiffs-Appellees,

v.

Loyd BARNICK, Defendant-Appellant.

Civ. No. 9039.

Supreme Court of North Dakota.

Feb. 27, 1975.

Ottmar, Nething & Pope, Jamestown, for defendant-appellant.

Kenneth M. Moran, Jamestown, for plaintiffs-appellees.

PEDERSON, Judge.

## CASE SUMMARY

This is an action for damages arising out of an automobile collision which occurred at about 9 p. m. on January 11, 1973, on U. S. Highway 281 south of Jamestown. The Stutsman County District Court, without a jury, found that defendant was negligent and that such negligence was the proximate cause of the collision. The court found that the plaintiff was not negligent. Judgment was entered awarding damages to the plaintiffs for their injuries resulting from the collision and for loss of services and loss of consortium, and the defendant appealed.

Judgment is affirmed.

## FACTS

The plaintiff-driver, Shirley Nitschke, was driving south from Jamestown, intending to turn east into a private driveway about four miles south of Jamestown. Shirley's passengers were her two sons, plaintiffs Landon Nitschke, 2, and Lance Nitschke, 10, and her daughter, Lynne, 15. Plaintiff Lawrence Nitschke is the husband of Shirley.

Preparatory to making this left turn, Shirley commenced applying her brakes some 900 feet north of the private driveway, and testified that she engaged the left turn signal at the same time. She looked into the rearview mirror and observed headlights some distance back.

She testified that before starting any left turn movement of her car, it was struck forcefully from the rear by defendant Loyd Barnick's car. Shirley and her two sons, Landon and Lance, were injured.

Barnick admits his negligence, but claims that Shirley was making a left turn toward the driveway and failed to yield to him as required by Section 39–10–25, N.D.C.C., and thus was contributorily negligent as a matter of law.

Shirley was awarded $9,250 for pain and suffering and loss of earnings.

Landon was awarded $800 for pain and suffering.

Lance was awarded $800 for pain and suffering (to be corrected to $500 as agreed by plaintiffs).

Lawrence was awarded $2,850 for medical expenses, incurred and to be incurred, and for loss of services and consortium.

Barnick claims that these awards are excessive in view of the actual injuries sustained and actual damages proved.

## ISSUES

Questions to be decided here are:

I. Was the plaintiff guilty of contributory negligence as a matter of law under the facts of this case?

II. Were the damages awarded excessive in view of the injuries sustained?

## DECISION

In all actions tried upon the facts without a jury, we are restricted in our review by the provisions in Rule 52(a) of the North Dakota Rules of Civil Procedure.

"The findings of fact of the court, trying the case without a jury, are binding upon us unless clearly erroneous." Dobler v. Malloy, 214 N.W.2d 510, 514 (N.D.1973).

## I.

With regard to the question of contributory negligence, the court's findings of fact are supported in its oral memorandum opinion in the following language:

"She arrived at a point which was her checkpoint to the north of their approach, some 900 feet or so and she stated that she, as was her custom, applied her brakes to slow down preparatory to making a turn, at the same time activating the left-turn signal. Mr. Barnick, the defendant, says he did not see the signal. Mrs. Nitschke says that she did signal. I feel that she is telling the truth in this and that she did in fact signal. She impresses me as being a rather prudent and careful woman and one who would be even more careful when she is driving the car with her children.

"She says that she saw the lights of an approaching car from the north in her rear view mirror. She checked—as far as I remember the testimony—only once, and Mr. Nething stresses this. There is a suggestion that there may be some negligence on her part from this fact, and taking into consideration 39–10–25, there may be a suggestion here because of that that she exercised poor judgment. Assuming that any oncoming vehicle could conceivably be going 60 miles an hour, which would be 90 feet per second, and approximately a little over 10 seconds 921 feet could be traversed—there is where the judgment factor comes in. Was she justified in making the turn into her driveway knowing that that car was behind her and knowing in order to make a turn she was going to have to slow down and taking these factors into consideration that she wouldn't have very much time to make that turn. This is a little disturbing fact but, on the other hand, we have her testimony that she was far enough back, she hadn't made her turn yet, and we have Mr. Barnick's testimony that the wheels of her car on the left side were on or close to the centerline; he didn't say they were over on the other side, and I must point out the fact remains that he had been drinking, and he admits two beers and three whiskey cokes, and this was not too far in the past with reference to the time that the accident occurred, and we are confronted with the fact that he must have or he should have seen this car ahead of him and he could have seen the turn signal but, even if he didn't, he performed very incorrectly in violating this particular section which says that before one passes one must give an audible signal. I don't think he said that he did and I am sure she said she heard none. Now assuming that she is wrong and incorrect and mistaken when she says she activated her signal, if she did he would have seen it, and if she didn't the fact remains that there was no reason for running into the rear end of the car which she was driving, so I am going to say that I believe there is no question that the majority of the negligence is, of course, on the side of the defendant. I haven't yet determined

whether she was somewhat negligent. I will make that determination and—

"MR. MORAN: The general consensus at the seminar I attended was that comparative negligence did not apply to actions which occurred before July 1st.

"THE COURT: What I am trying to say is I believe there is a right to recover here and I lean that way and the final decision on that will be made at 11:00 o'clock on Monday morning, and if I resolve it in that direction then I will have some figures to give you as to the amount of damages."

When the court reconvened on the following Monday, the court continued its memorandum opinion as follows:

"In the case of Shirley Nitschke, et al., vs. Loyd Barnick, I have looked over my notes again, and also the exhibits, including the pictures and the diagram, and I have determined that Mrs. Nitschke was not negligent, she had not made her turn to the point where she was blocking the highway, she was on her own side of the road, and the only conclusion we can come to from what we have here is that the car she was driving was struck very forcibly in the rear, and she was making a signal and she was not negligent and Mr. Barnick was negligent. She is entitled to recover, and the two boys are entitled to recover, and Mr. Nitschke is also entitled to recover."

In the findings of fact, the court said: "That said collision was caused by the negligence of Defendant who was intoxicated, who failed to keep a proper lookout, failed to keep his vehicle under proper control, and who otherwise violated rules of caution and safety and the rules of the road; that Plaintiff Shirley Nitschke was not negligent in operating her motor vehicle."

Barnick argues that this is reversible error and that, as a matter of law, Shirley was negligent, per se, because she violated the requirements of Section 39–10–25, N.D. C.C., and that the failure of Shirley to comply with this statute was the proximate cause of the accident.

Barnick cites Muhlhauser v. Archie Campbell Construction Co., 160 N.W.2d 524, 528 (N.D.1968), in support of his position. In nonspecific terms, *Muhlhauser* stands for the proposition that a determination by the trier of facts (the jury in that case and the trial court in this case) will not be set aside on a review of that determination (by the trial court, under Rule 59, in *Muhlhauser,* and by the Supreme Court, under Rule 52(a), in this case) unless there is a clear and convincing reason to do so. The majority, in *Muhlhauser,* found this rule more impelling than the general rule that the granting of a new trial should not be as readily disturbed as the denial of a new trial. From our analysis we conclude that *Muhlhauser* has no application in this case.

The record here contains substantial evidence, as set out later, supporting the findings that Shirley was not negligent. The trial court's memorandum opinion says that she was not making a left turn when she was struck. Section 39–10–25, N.D.C.C., would apply only if Shirley was making a left turn and if such was the proximate cause of the damages.

Section 39–10–25, N.D.C.C., reads:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway and a vehicle turning left to enter a private road or driveway shall yield the right of way to all vehicles approaching on said highway and to any vehicle which is then in the left-hand lane overtaking or is about to overtake the left turning vehicle."

In Glatt v. Feist, 156 N.W.2d 819, 829 (N.D.1968), we said with respect to violating rules of the road:

"However, we have often said that such violation is evidence of negligence, although not negligence as a matter of law. Gravseth v. Farmers Union Oil Co. of

Minot, 108 N.W.2d 785 (N.D.1961); Erdahl v. Hegg, 98 N.W.2d 217 (N.D.1959); Renschler v. Baltzer, 95 N.W.2d 574 (N.D. 1959); Attleson v. Boomgarden, 73 N.W.2d 448 (N.D.1955); and Imus v. Huber, 71 N.W.2d 339 (N.D.1955)."

See also, Steel v. Downs, 438 F.2d 310 (8th Cir. 1971), and Greene v. Werven, 275 F.2d 134 (8th Cir. 1960).

■ Although the record contains conflicting testimony on some matters relating to the question of contributory negligence, Shirley did testify that: she started slowing her vehicle about 900 feet north of the intended left turn, she activated the left turn signal, she gently applied the brakes, she had not reached the point where she could make her left turn when her vehicle was struck from the rear, the collision occurred in the right lane, and her vehicle had not crossed the center line before the collision. Her testimony was supported in part by that of the investigating officer and by ·Barnick himself.

We cannot conclude that the finding that Shirley was not negligent was clearly erroneous.

## II.

Concerning the amounts awarded, the trial court, in its oral memorandum, said:

"She is entitled to recover, and the two boys are entitled to recover, and Mr. Nitschke is also entitled to recover.

"As far as the boys are concerned, it is the judgment of the Court that Lance shall recover the sum of $500; Landon shall recover the sum of $800; Lawrence, the father of the two boys, and the husband of Shirley, shall recover the $600 he prays for as current special damages; the exhibits we have show that the medicals came to $537.75—and I am aware that there are other expenses that he had to incur, for instance, there was nothing put in relating to the trips to Fargo, so he is entitled to recover the $600; and the Court has determined and does determine

that he is entitled to the sum of $750 for future medical and other special damages; and $1500 for loss of services and consortium, making a total for Lawrence of $2,850; and Shirley will receive her loss of income which comes to $1,244.33, and what I have done is I have rounded it out to $1,250, and making her total damages at $9,250; this includes her special damages for loss of wages and for general damages for pain and suffering."

In the findings of fact the court said:

"3. That as a result of said collision caused by the negligence of Defendant, Plaintiff Shirley Nitschke sustained severe injuries to her neck and other parts of her body, necessitating medical care since collision and which will require medical care in the future, causing considerable pain and suffering, and also causing said Plaintiff to incur a loss of earnings in the sum of One Thousand Fifty (sic) Dollars ($1,250) to date. Plaintiffs Landon Nitschke and Lance Nitschke, who are children of the said Shirley Nitschke and who were passengers in the said 1967 Ford automobile being driven by the said Shirley Nitschke, each suffered neck and other injuries.

"4. That Plaintiff Lawrence Nitschke, the husband of Plaintiff Shirley Nitschke and father of Plaintiffs Lance and Landon Nitschke, as a result of said collision incurred doctor, X-ray, drug and other bills, all of the value and sum of Six Hundred Dollars ($600.00) to date. Additionally, Plaintiff Lawrence Nitschke as a result of said collision has suffered a loss of services of his said wife, Plaintiff Shirley Nitschke, as well as a loss of consortium with her."

Judgment was entered as set forth in the factual statements above.

Barnick supports his argument that the trial court erred, with a single citation of a general rule on damages from 22 Am.Jur.2d Damages, § 109, that the amount awarded for pain and suffering must be fair and reasonable, free from sentimental and fan-

ciful standards, and based upon facts disclosed.

This court has considered such matters on several occasions and has expressed agreement with this general rule.

In Clark v. Josephson, 66 N.W.2d 539, 548 (N.D.1954), we said:

"There is no fixed rule by which compensation for pain and suffering may be measured. Human suffering is not a commodity; it has no price, and therefore, it was left to the best judgment and sound discretion of the jury to determine compensation for the injuries sustained by Ella Clark and the pain and suffering arising therefrom. Each case must be determined upon its own peculiar facts.
\* \* \*

"Medical testimony may be used for the purpose of increasing or minimizing the amount of damages. Blashfield Cyclopedia of Automobile Law and Practice, Volume 10, Part I, Section 6421. We have not found, nor has appellant pointed to any cases holding that substantial damages may not be awarded in absence of medical testimony."

In Lake v. Neubauer, 87 N.W.2d 888, 891 (N.D.1958), we said:

"The determination of damages for pain and suffering is not susceptible of arithmetical calculation. Its ascertainment must to a large degree depend upon the common knowledge, the good sense and practical judgment of the jury. They heard the testimony of the plaintiff and saw her on the witness stand. They had the opportunity to observe her appearance and actions at that time, which could be considered by the jury in arriving at a just conclusion."

The testimony on medical expenses, loss of wages, pain and suffering, loss of services and loss of consortium is undisputed. Barnick challenges only the amounts awarded to Shirley, Lance and Landon for pain and suffering and to Lawrence for loss of services of and consortium with his wife.

The award to Shirley was $9,250 of which $8,000 was for pain and suffering. The testimony was that she was injured: she had a banged-up knee, pain in her chest, sprain of the neck and upper part of the dorsal area, headaches, soreness of the neck, back, breastbone and ribs; that she was treated by an orthopedic surgeon, has received in excess of sixty physical therapy treatments, wore a cervical spinal collar for several months, and future problems have not been ruled out.

The award to Lance was $500 for pain and suffering. The testimony was that he was injured, required treatment by an orthopedic surgeon and physical therapy treatment, had a slight concussion, still suffers headaches and dizziness, and has nightmares and emotional problems.

The award to Landon was $800 for pain and suffering. The testimony was that he was injured, required hospitalization and treatment by an orthopedic surgeon at both Jamestown and Fargo, had a bruise on his face, soreness and swelling on his neck, and enlarged glands.

Under the circumstances, none of these awards can be considered excessive.

The award to Lawrence was in the amount of $2,850 for medical expenses incurred and to be incurred and for loss of services and consortium, of which $1,500 was for loss of services and consortium. The testimony was that Shirley was not able to continue her normal housework, including vacuuming, dishwashing, window cleaning, and lifting of children, nor was she able to drive the children and her husband to school, church and work activities, and that some of these disabilities continued as of the trial date. The only testimony with regard to loss of consortium indicated that Shirley's sex life was not the same for a number of months but returned to normal after five or six months. As a separate item, the testimony on loss of consortium was not significant; however, when added to the testimony relating to

loss of services, the award of $1,500 cannot be considered excessive. Although there was no valuation testimony on any item of pain and suffering, loss of services, or loss of consortium, we hold that such was not necessary.

In reviewing the entire record we find testimony of substance from which the trial court could properly conclude that Shirley suffered a loss of wages and considerable pain and suffering, that Landon and Lance suffered pain and suffering, and that Lawrence was and will be required to pay for medical treatment and that he suffered a loss of services from and consortium with his wife, all as a direct consequence of the January 11 collision.

Barnick has not carried the burden of demonstrating that the amounts awarded were unfair, unreasonable, tainted with sentimental and fanciful standards, and based upon other than the facts disclosed, which is the general rule that he urges us to apply, nor has he demonstrated that the amounts were clearly erroneous, which is the specific rule we must apply.

Applying Rule 52(a), N.D.R.Civ.P., for reasons stated herein, we hold that the trial court's findings were not clearly erroneous and the judgment is, in all things, affirmed.

ERICKSTAD, C. J., and VOGEL, PAULSON and SAND, JJ., concur.